IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CHRISTIAN WATKINS,

    Plaintiff,

v.

KFC U.S. PROPERTIES, INC.,

    Defendant.

CIVIL ACTION NO.
1:09-CV-1007-JEC

**ORDER AND OPINION**

    This case is before the Court on the following motions: plaintiff's Motion for Placement on Trial Calendar and for Adoption of the Pretrial Order [61]; plaintiff's Motion for Sanctions for defendant's Spoliation of Evidence [64]; plaintiff's Motion to Exclude defendant's Expert Witness, Dr. Peter Michael Bernot [76]; and plaintiff's Motion for Leave of Court to Supplement Her Motion for Sanctions for defendant's Spoliation of Evidence [80].

**I. PLAINTIFF'S MOTION FOR SANCTIONS BASED ON DEFENDANT'S ALLEGED SPOLIATION OF EVIDENCE [64]**

    **A.**   **Background**

    Plaintiff has sought sanctions against defendant KFC for its alleged spoliation of evidence. Specifically, plaintiff suffered a bad fall while in the bathroom of defendant's KFC restaurant in

Lithonia, Georgia on March 16, 2007.  She claims that she slipped on some water in the bathroom floor.  Defendant claims, however, that three of its employees checked the bathroom after the fall and saw no water on the floor.

An ambulance was called to attend to the plaintiff.  Seven days after the incident, defendant received a letter of representation from an attorney representing the plaintiff.  Almost two years later, plaintiff filed suit.

At the beginning of this litigation, plaintiff sought discovery of any video surveillance that defendant had made of the restaurant on the date of the incident.  The defendant responded that there was an operational video surveillance system in place that captured the cash register and lobby entrance of the restaurant on the date of the incident, but that this footage no longer existed because, in the normal course of business, the Lithonia store had recorded over the video footage, as it does with all footage, within 72 hours.

Plaintiff acknowledges that the video surveillance did not cover the bathroom and therefore would not have shown the condition of the bathroom or the plaintiff's fall.  Plaintiff contends, however, that the surveillance footage might have been helpful in revealing whether or not the employee working at the front counter, Shanekia Marshall, had actually left her station to inspect the bathroom approximately 15 minutes before the incident, as Ms.

2

Marshall testified that she had done. An inspection of the bathroom within this time period by the defendant's employee would demonstrate that the defendant had exercised due care and would offer it a defense in this case.[1]

Plaintiff believes that the surveillance footage would have captured Ms. Marshall, had she left her station, because the camera is aimed at the door into the restaurant, which is directly in front of the cash registers. The camera would have shown an employee in Ms. Marshall's position leaving the cash register area, walking around the counter, and walking past the lobby door in the direction of the bathrooms. If there was no depiction on the surveillance tape of Ms. Marshall leaving her station at the described time, plaintiff argues, then that fact would contradict Marshall's testimony that she had inspected the bathroom prior to the fall.

Morever, plaintiff contends that the defendant should have been aware at the time of the incident that litigation was contemplated and should have ensured that the video tape was not recorded over. Plaintiff asks that the Court sanction the defendant, either by entering a default judgment or striking the defendant's answer.

---

[1] As noted, defendant's primary defense appears to be its position that three employees checked the bathroom after the plaintiff's fall and saw no water. Plaintiff does not contend that surveillance footage would be relevant toward deciding that dispute.

3

**B.   Legal Standards**

Spoliation is defined as the destruction of, or failure to preserve, evidence that is necessary to contemplated or pending litigation. *Craig v. Bailey Bros. Realty, Inc.,* 304 Ga. App. 794, 796 (2010). To prevail on a spoliation argument, a plaintiff must show that the putative defendant had been put on notice that litigation was contemplated prior to the destruction of the evidence. *Id.* The mere fact that someone has been injured in an accident, without more, does not constitute notice that the injured party is contemplating litigation. *Id.* at 796-97.

The Eleventh Circuit has held that, for diversity actions litigated in federal court, federal law governs the determination whether to impose sanctions for the alleged spoliation of evidence. *Flury v. Daimler Chrysler Corp.,* 427 F.3d 939, 944 (11th Cir. 2005). This is so because a decision as to whether spoliation occurred, and whether to impose sanctions for it, if it did, amounts to an evidentiary decision that should be governed by federal law. *Id.* That said, the *Flury* panel looked to Georgia law for guidance, as federal law in the circuit had not, at that time, set forth specific guidelines. Further, the panel found Georgia law on spoliation to be consistent with federal spoliation principles. *Id.*

*Flury* involved an egregious example of spoliation as the plaintiff, who had been injured in a car accident and who intended

4

to sue the automobile manufacturer for an alleged air bag defect, sold the car before filing suit and before the defendant manufacturer had inspected it, thereby rendering it impossible for the defendant to effectively provide a defense that the air bag system was not defective. The Eleventh Circuit reversed the district court, which had permitted the plaintiff to proceed with litigation following this conduct, and directed that the case should have been dismissed.

In doing so, the Circuit noted the existence of three possible sanctions against a spoliating plaintiff: (1) dismissal of the case; (2) exclusion of expert testimony; or (3) a jury instruction that raises a presumption against the spoliator. In determining whether dismissal is warranted, a district court should consider: (1) whether the defendant was prejudiced as a result of the destruction of evidence; (2) whether the prejudice could be cured; (3) the practical importance of the evidence; (4) whether the plaintiff acted in good or bad faith; and (5) the potential for abuse if expert testimony about the evidence was not excluded. *Id.* at 945.

Although the *Flury* opinion focuses on whether to dismiss the case of a plaintiff who has destroyed evidence, courts within the Eleventh Circuit have applied its standards when deciding whether to sanction a defendant who has failed to preserve evidence. As

5

noted, plaintiff here seeks either the entry of a default judgment against the defendant or the striking of its answer.

Notwithstanding *Flury's* listing of bad faith as one of several factors, it is important to note that both Eleventh Circuit and district court opinions within the circuit have emphasized the requirement that a party seeking sanctions demonstrate the existence of bad faith by the party that destroyed the evidence; merely showing negligence by the alleged spoliator will not do the trick. *See, e.g., Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1310 (11th Cir. 2009), citing *Bashir v. Amtrak,* 119 F.3d 929, 931 (11th Cir. 1997)(an adverse inference may be drawn from a party's failure to preserve evidence only when that conduct is predicated on bad faith; while malice is not required, mere negligence in losing or destroying evidence is insufficient); *Woodard v. Wal-Mart Stores E., LP*, --- F. Supp. 2d ---, 2011 WL 2711203 at **6-7 (M.D. Ga. July 13, 2011) (Royal, J.); *Point Blank Solutions, Inc. v. Toyobo Am., Inc.,* 2011 WL 1456029 at *8-10 (S.D. Fla. April 5, 2011)(Goodman, Mag.J.) (collecting cases that discuss requirement of bad faith); *Heath v. Walmart Stores E., LP*, 697 F. Supp. 2d 1373, 1378-79 (N.D. Ga. 2010)(Forrester, J.).

### C. <u>Application of Law to This Case</u>

Defendant's strongest arguments against imposition of sanctions are twofold: first, defendant had not been put on notice that the

AO 72A
(Rev.8/82)

plaintiff contemplated litigation when the video tape, in the normal course of business, was taped over within 72 hours of the incident and second, that the plaintiff has failed to demonstrate that the defendant acted in bad faith.[2]

As to whether the defendant was on notice of contemplated litigation when the video tape was recorded over within three days of the incident, neither party has cited to any Eleventh Circuit law, and the Court will assume that there is none. The parties have cited Georgia appellate case law on this point, but these decisions are very fact-specific and not altogether consistent with each other, making it difficult for the Court to divine a central principle for applying this standard. Because the Court has concluded, *infra*, that the plaintiff has failed to provide evidence of bad faith, it need not answer this question.

### D. Bad Faith

At present, the plaintiff has not provided sufficient evidence to indicate that the destruction of the videotape footage of the time period at issue was done in bad faith by defendant. As noted, following the plaintiff's fall, she was clearly in distress and an

---

[2] In her Reply [78], plaintiff correctly notes that defendant's response to this motion was filed 14 days late and without a motion requesting permission to file an untimely response. Nevertheless, in the interests of justice, the Court has considered the defendant's response.

7

ambulance was called for her. According to the defendant, plaintiff's sister, who was with her at the time of the fall, made a comment to an employee indicating that the plaintiff had suffered other falls ("This happens to her all the time."). Plaintiff indicated to the employees that she had slipped on some water. According to defendant, three employees inspected the bathroom floor and saw no water.[3]

Also following the incident, the restaurant's general manager, Shawnya Frank, telephoned the KFC Accident Hotline, which is part of the Customer Claims Unit. KFC employees are required to report all customer accidents to this hotline. The hotline responder[4] asked Frank standard questions that are required to be asked when an accident is reported, such as whether the customer was seeking medical treatment, whether there was a video camera system, and whether the claimant was represented by an attorney. According to the print-out recording Frank's responses, she answered "yes" as to

---

[3] Defendant does not cite to an affidavit or to deposition testimony to support its assertion here or its assertion regarding the statement of plaintiff's sister. It is the Court's understanding that the defendant's employees at the restaurant were deposed by plaintiff and plaintiff does not dispute that these witnesses would testify as defendant has described.

[4] The Court is uncertain whether the responder was a live person or an automated responder. The print-out of the call shows no follow-up on any question and therefore the undersigned assumes the responder was automated.

the first question and "unknown" as to the third question, as the incident had just occurred. As to the second question--whether the location utilized a video camera system--Frank answered "yes." The print-out does not reveal any further colloquy on the topic of a camera system.

From the above facts, plaintiff contends that the defendant should have been on notice that plaintiff contemplated litigation and that the video footage of the cashier's counter might have provided pertinent evidence for that litigation. Armed with that knowledge, plaintiff argues, defendant's Hotline staff should have told Frank to deviate from the defendant's normal policy of taping over video tapes every 72-hours and instead to maintain the video tape in use during the time period of this incident.

At the outset, the Court notes its agreement that whenever a serious fall occurs in circumstances such as this, it would be prudent for a company to preserve any video footage that might bear on the incident. Prudence, however, is not the standard here; bad faith is. Presumably, courts have imposed a bad faith standard out of a recognition that mistakes or misjudgments can occur innocently and that it would undermine the truth-seeking function of a trial to robotically require the entry of a verdict, or a negative inference, against a party whose failure to preserve evidence was not done out of some calculation, intent, or awareness that

9

preservation of the evidence could be important in a later lawsuit.

Examining the question of bad faith here, plaintiff has only two possible targets for its accusation: Ms. Frank, the manager of the Lithonia KFC or KFC, itself, for maintaining a policy that does not call for preservation of video tapes whenever an accident has occurred. As to Ms. Frank, the plaintiff has not provided the Court with evidence, as opposed to speculation, that Ms. Frank acted in bad faith by failing to make a unilateral decision to override her company's policy of reusing the same video tape to record the area near the lobby door and cash register. The Court does not know what Frank's thinking may have been at the time, as neither party has cited to any testimony by her on this matter. As the fall occurred in the bathroom, however, and as there was no video surveillance in the bathroom, one can understand how Ms. Frank might have been unaware that video footage of the door and cash register area could later prove relevant. While lawyers steeped in slip and fall law are presumably aware that a timely pre-accident inspection can create a defense for a premises owner, there is no evidence to indicate that Ms. Frank would have been focused on the potential significance of video footage confirming whether or not Ms. Marshall had actually left her station prior to the incident.

As to KFC's policy concerning the preservation of video footage in these circumstances and as to any further interaction between

Frank and the Hotline response team, the parties have offered no information.  Indeed, it appears that plaintiff did not take any discovery concerning KFC's policy.  Accordingly, the Court is in no position to gauge whether KFC's policy or the directions provided by the hotline responder give rise to an inference of bad faith on KFC's part. Given the absence of evidence on this important matter, plaintiff cannot succeed on her motion.  Certainly, if plaintiff offers at trial some evidentiary support for her allegations, the Court can revisit this matter.  For now, however, plaintiff has failed to prove that sanctions against defendant are appropriate in this situation.  For that reason, the Court **DENIES** plaintiff's Motion for Sanctions for defendant's Spoliation of Evidence [64].[5]

**II.   PLAINTIFF'S MOTION TO EXCLUDE DEFENDANT'S EXPERT WITNESS [76]**

Plaintiff has also moved to exclude defendant's expert witness, Dr. Peter Michael Bernot [76], based on defendant's untimely disclosure of that expert.  According to the Summary of Expert Opinion [79-2] provided by defendant, Dr. Bernot would testify that plaintiff's fall did not give rise to the injury for which she later received surgery and that she suffered no long-term impairment. Dr.

---

[5] The Court also **GRANTS** plaintiff's Motion for Leave of Court to Supplement Her Motion for Sanctions for defendant's Spoliation of Evidence [80].

Bernot would also testify regarding the reasonableness of the charges for plaintiff's medical services.

The Court agrees with plaintiff that defendant's disclosure is untimely and is also inadequate. Local Rule 26.2(C) provides that "any party who desires to use the testimony of an expert witness shall designate the expert sufficiently early in the discovery period to permit the opposing party the opportunity to depose the expert...." LR 26.2(C), NDGa. In short, at the least, a party is expected to disclose his expert witness at some point during the discovery period.

Defendant came nowhere near close to meeting this deadline. That is, defendant did not disclose its expert within the discovery period, which ended on November 19, 2009. Instead, defendant made its disclosure on November 18, <u>2010</u>, which was <u>one year</u> after discovery had ended. Defendant made this disclosure in its portion of the pretrial order, which was likewise untimely, having been provided 10 months after the Order was due and after plaintiff had timely filed its own portion of the Order. Presumably, both the disclosure and defendant's portion of the Order were submitted only because plaintiff had shortly before moved the Court to adopt plaintiff's iteration of the pretrial order as the operative version, given defendant's continuing failure to provide its own portion of the order.

12

When a party does not timely disclose its expert, the local rule further provides that the party "shall not be permitted to offer the testimony of [that] expert, unless expressly authorized by court order based upon a showing that the failure to comply was justified." LR 26.2(C), NDGa. In attempting to offer a justification for its extremely tardy notification, defendant has offered a litany of excuses as to why it took a long time to get an expert in place. None of these excuses are persuasive. Moreover, defendant never notified the Court or the plaintiff that defendant was operating on a private discovery track that continued well beyond the period when the Court had indicated that discovery would be concluded. Thus, while defendant characterizes its efforts to name an expert witness as being diligent, the Court concludes that defendant's performance was anything but.

In addition, defendant offers a novel argument in opposition to exclusion of its expert. Defendant notes that in most cases where expert testimony has been excluded, the party offering the expert has been the plaintiff, not the defendant. From this, defendant infers that "expert disclosure requirements are more stringently enforced against plaintiffs because the plaintiff is in control of his/her case from the outset and should know what evidence, including expert testimony, will be necessary." (Def.'s Resp. [79] at 6.) Defendant is correct that a plaintiff will almost

13

always be the party to go first in disclosing an expert, as it is plaintiff's responsibility to prove her case. That sequencing reality, however, does not mean that a defendant is subject to no deadline in announcing its own expert. If the timing of plaintiff's disclosure of an expert necessitated an extension of discovery for the defendant to secure its own expert, the defendant should have spoken up and said so. Even now, however, the defendant does not actually argue that the timing of the plaintiff's disclosure caused defendant to be late in its own disclosure. Instead, defendant blames the non-responsiveness of medical providers for the delay. In short, the Court concludes that the defendant has not offered a persuasive justification for its extraordinary delay.

In addition to the untimeliness of the disclosure, plaintiff also correctly notes that defendant's summary, itself, was conclusory as to the basis of the expert's opinion and was insufficient to constitute an expert report, as set out in FED. R. CIV. P. 26(a). Specifically, Rule 26(a)(2)(B) provides that expert disclosures "must be accompanied by a written report-prepared and signed by the witness." The report must contain, among other things:

    (i) A complete statement of all opinions the witness will express and the basis and reasons for them;

    (ii) The facts or data considered by the witness in forming them;

14

>    (iii) Any exhibits that will be used to summarize or support them;

*Id.* As plaintiff correctly notes, the defendant's summary was lacking as to the above requirements and was also not signed by the defendant's expert.

If the Court were to permit the defendant to utilize this witness, it would then have to direct the defendant to provide a report that complies with Rule 26.[6] After that report was received, discovery would then have to be reopened for the plaintiff to depose the expert. All of this would create delay and unnecessarily prejudice the plaintiff, who has timely performed her obligations under the local rules.

Accordingly, because the defendant did not timely disclose its expert witness and has not shown a justification for this lapse, the Court **GRANTS** plaintiff's motion to exclude defendant's expert [76].[7]

---

[6] As plaintiff correctly notes in its Reply [81], the defendant has still not provided an expert report that corrects the shortcomings of defendant's "summary."

[7] One final motion is pending: plaintiff's Motion for Placement on Trial Calendar and Motion for Adoption of the Pretrial Order [61]. After a long period of time when the defendant had not provided its portion of the pretrial order, plaintiff filed a motion asking that the Court not delay placement of the case on a trial calendar awaiting the defendant's own portion of the Order and that instead the Court adopt plaintiff's part of the Order [61]. That motion prompted the defendant to file its own portion of the pretrial order. Albeit all pretrial orders are required to be joint orders between the parties, unless one of the parties is a pro se

15

### III. CONCLUSION

The Court **GRANTS IN PART AND DENIES IN PART** plaintiff's Motion for Placement on Trial Calendar and for Adoption of the Pretrial Order [61]; **DENIES** plaintiff's Motion for Sanctions for defendant's Spoliation of Evidence [64]; **GRANTS** plaintiff's Motion to Exclude defendant's Expert Witness, Dr. Peter Michael Bernot [76]; and **GRANTS** plaintiff's Motion for Leave of Court to Supplement Her Motion for Sanctions for defendant's Spoliation of Evidence [80].

SO ORDERED, this <u>31st</u> day of August, 2011.

<u>/s/ Julie E. Carnes</u>
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE

---

litigant, the Court will utilize defendant's portion of the pretrial order and **DENIES** that part of plaintiff's motion. As to placement on a trial calendar, the Court **GRANTS** that motion and will place this case on the Court's next civil trial calendar.

16